IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2012 AUG -3 PM 1:20
DEPUTY CLERK_____

| | |
|---|---|
| CHARLES ALPINE,<br>Petitioner,<br><br>v.<br><br>RICK THALER, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>Respondent. | )<br>)<br>)<br>)<br>)  Civil No. 7:12-CV-106-O-BL<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

This is a petition for habeas corpus relief brought pursuant to 28 U.S.C. § 2254 by an inmate confined in the Allred Unit of the Texas Department of Criminal Justice ("TDCJ") in Iowa Park, Texas. Alpine seeks to challenge the validity of his 2007 Harris County conviction for the offense of aggravated assault with a deadly weapon. *See* Petition p.6; *Alpine v. State*, No. 01-07-00177-CR, 2008 WL 2388128 (Tex. App. – Houston [1st Dist] 2008, *no pet.*) (copy attached hereto as Exhibit A). This is the same conviction that Alpine challenged in a previous case, *Alpine v. Thaler*, No. H-10-2783 (S.D. Tex. Apr. 5, 2011) (dismissed as time-barred).

The Antiterrorism and Effective Death Penalty Act of 1996 limits the circumstances under which a state prisoner may file a second or successive application for habeas relief in federal court. In general, a later petition is successive when it raises a claim challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition or otherwise constitutes an abuse of the writ. *Leal Garcia v. Quarterman*, 573 F.3d 214, 222 (5th Cir. 2009); *Crone v. Cockrell*, 324 F.3d 833, 836-37 (5th Cir. 2003). The grounds for relief set forth in the instant petition were raised, or could have been raised, in Alpine's earlier petition.

When a petition is second or successive, the petitioner must seek an order from the Fifth Circuit Court of Appeals that authorizes this Court to consider the petition. *See* 28 U.S.C. § 2244(b)(3)(A). Because the instant petition is successive, this Court is without authority to entertain the petition unless leave to file is granted by the Fifth Circuit. *See Crone, supra.*

The District Court may opt to transfer a successive habeas petition to the United States Court of Appeals for the Fifth Circuit pursuant to *Henderson v. Haro*, 282 F.3d 862, 864 (5th Cir. 2002) and *In re Epps*, 127 F.3d 364, 365 (5th Cir. 1997). However, Alpine has twice been sanctioned by the Fifth Circuit and is not permitted to file a motion for authorization to file a successive § 2254 petition until the sanctions have been satisfied. *See In re Al-Pine*,[1] Nos. 11-20865 & 12-20005 (each sanctioning Charles Alpine $100 for repeatedly filing frivolous, repetitive and abusive pleadings). Because he's been sanctioned by the Fifth Circuit, this Court should not transfer the instant case.

For the foregoing reasons, it is recommended that the instant petition be DISMISSED without prejudice as successive.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge

---

[1] The Court notes that Charles Alpine hyphenates his last name in his pleadings ("Al-Pine"). The TDCJ website indicates that his last name is not hyphenated.

is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED this 3rd day of August, 2012.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE

# Exhibit A

Case 7:12-cv-00106-O   Document 12   Filed 08/03/12   Page 4 of 8   PageID 43

Result

Westlaw
FIND&PRINT  KEYCITE  DIRECTORY  KEY NUMBERS  COURT DOCS  FORMFINDER  SITE MAP  HELP  SIGN OFF
PreferencesAlert CenterResearch Trail
Add/Remove Tabs

Edit Search | Locate in Result                    Links for 2008 WL 2388128 | Result List (9 Docs)

H
**Alpine v. State**
Not Reported in S.W.3d, 2008 WL 2388128
Tex.App.-Houston [1 Dist.],2008.
June 12, 2008 (Approx. 3 pages)

Not Reported in S.W.3d, 2008 WL 2388128 (Tex.App.-Hous. (1 Dist.))

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
**Do not publish. TEX. R. APP. P. 47.2(b).**
Court of Appeals of Texas,
Houston (1st Dist.).
**Charles ALPINE**, Appellant
v.
The STATE of Texas, Appellee.
No. 01-07-00177-CR.
June 12, 2008.

On Appeal from the 184th District Court, Harris County, Texas, Trial Court Cause No. 1092935.
Emily Munoz-Detoto, for Charles Alpine.

William J. Delmore III, for The State of Texas.

Panel consists of Justices TAFT, KEYES, and ALCALA.

**MEMORANDUM OPINION**

EVELYN V. KEYES, Justice.
*1 A jury convicted appellant, Charles Alpine, of the felony offense of aggravated assault with a deadly weapon, enhanced by a prior felony conviction. The trial court assessed appellant's punishment at imprisonment for 45 years. In two points of error, appellant argues that the evidence presented at trial was legally and factually insufficient to support the verdict.

We affirm.

ResultsPlus℠   View All Results

**Causes of Action**
Causes of Action Arising Out of Cell Phone Use While Operating a Motor Vehicle

**Am.Jur. Trials**
Arbitration and Mediation of Bankruptcy Disputes

**ALR**
Seizure or Detention for Purpose of Committing Rape, Robbery, or Other Offense as Constituting Separate Crime of Kidnapping

## Background

On July 29, 2006, Lisa Trevino, the complainant, and her five children arrived at her husband, Noe Trevino's, place of business shortly before his shift ended at midnight. The complainant backed her SUV into a handicapped parking space in front of the building. Because of previous incidents that had occurred on the premises, Noe asked the complainant to wait with their children inside the lobby of the controlled building until it was time for him to leave. At the end of his shift, Noe advised his wife that she could go before him and begin loading the children into the SUV while he clocked out of work. While placing the children in the SUV, the complainant heard appellant yelling and swearing at her and her children from behind a truck in the parking lot. The complainant reacted by rushing into the SUV from the passenger's side before the children could be completely buckled in. While she climbed from the passenger's side over to the driver's seat, the complainant called Noe from a cell phone to alert him that she and the children were being attacked. Appellant made statements to the complainant and her children including, "Come here, you b* * * *. I'm going to get you." When appellant hit the side view mirror with what she perceived to be a bat, the complainant started her SUV. She called 911 and moved toward a grass median. Appellant followed and hit the hood twice more before the complainant could drive off and call 911 again. The complainant drove to a nearby police substation. After an officer met her there, she returned to the crime scene.

After Noe got the telephone call from his wife, he exited the building and saw his wife jump into the vehicle and move to the driver's seat. Noe heard appellant's comments to his family and saw appellant waving around what he described as a club hitting the SUV. Noe began to yell to appellant to distract him and to give his family enough time to drive away. He testified that his wife was able to drive toward the median and that appellant hit the SUV approximately five times before it drove away. Noe testified that he had had no prior contact with appellant and he was unaware of any contact his wife had had with him.

Noe reentered the building and yelled to his shift supervisor, Rodney Aird, that a man was attacking his wife. Aird called 911 and alerted the police about the disturbance that was occurring. Noe followed appellant away from the premises until the police arrived and arrested appellant.

At trial, Trevino identified appellant as the man he saw that night. Both Noe and Aird testified that they were afraid for the complainant's and the children's lives, in addition to their own. All of the witnesses testified that appellant struck the SUV up to four or five times.

**\*2** Officer Flores testified that, after arriving on the scene, he received a description of the attacker from Aird. Officer Flores found appellant three or four blocks away with a large wooden club and a bag. Inside the bag, Officer Flores found a large knife. Officer Flores took appellant back to the scene of the incident, where the complainant identified him as the attacker. Appellant was then placed under arrest. At trial, Officer Flores identified appellant as the man he arrested, and he testified that the wooden club was capable of causing death or serious bodily injury.

## Legal Sufficiency

In his first point of error, appellant contends the evidence at trial was legally insufficient to support his conviction for aggravated assault with a deadly weapon. Appellant specifically argues that the State presented legally insufficient evidence that the weapon appellant used the night of the incident was capable of causing death or serious bodily injury.

In determining whether evidence is legally sufficient to support a conviction of guilt, the evidence is viewed by the appellate court in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. _Drichas v. State_, 175 S.W.3d 795, 798 (Tex.Crim.App.2005) (citing _Cates v. State_, 102 S.W.3d 735, 738 (Tex.Crim.App.2003)); see also _Jackson v. Virginia_, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89 (1979). "The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt." _Santacruz v. State_, 237 S.W.3d 822, 825 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd) (citing _Matson v. State_, 819 S.W.2d 839, 846 (Tex.Crim.App.1991)).

### *Aggravated Assault*
A person commits aggravated assault with a deadly weapon if he or she intentionally or knowingly threatens another with imminent bodily injury and uses or exhibits a deadly weapon during the act of assault. Tex. Penal Code. Ann. § 22.02(a)(2) (Vernon Supp.2007). The penal code defines a deadly weapon as

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

_Id._ § 1.07(a)(17)(A)(B) (Vernon Supp.2007).

An object may be a deadly weapon per se if it is either "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury [.]" _Thomas v. State_, 821 S.W.2d 616, 619-20 (Tex.Crim.App.1991). The bat or club described by the complainant and the witnesses does not constitute a deadly weapon per se under subsection 1.07

(a)(A)(B). See Parkman v. State, 191 S.W.2d 743, 746 (Tex.Crim.App.1945); Granger v. State, 722 S.W.2d 175, 176 (Tex. App.-Beaumont 1986, pet. ref'd). Therefore, we must determine if the object became a deadly weapon by appellant's use or intended use of the object, rendering it capable of death or serious bodily injury. Tex. Penal Code Ann. § 1.07(a)(17)(A); In re S.B., 117 S.W.3d 443, 446 (Tex.App.-Fort Worth 2003, no pet.) (citing McCain v. State, 22 S.W.3d 497, 503 (Tex.Crim. App.2000)). Expert testimony is not required for a jury to find a weapon to be a deadly weapon. English v. State, 647 S.W.2d 667, 669 (Tex.Crim.App.1983).

*3 The Court of Criminal Appeals has approved several factors that are to be used in determining whether or not an object constitutes a deadly weapon. In re S.B., 117 S.W.3d at 446. Those factors include (1) the physical proximity between the victim and the object; (2) the threats or words used by the assailant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious bodily injury; and (5) the manner in which the defendant used the weapon. Id. No one factor is determinative. Id. at 447. Therefore, the appellate court must examine each case independently to determine whether, based on the surrounding facts, the object in the manner in which it was used constituted a deadly weapon. Id. (citing Brown v. State, 716 S.W.2d 939, 947 (Tex.Crim.App.1986)). A jury is allowed to consider the victim's fear when assessing all of the facts. See Warren v. State, 764 S.W.2d 906, 908 (Tex.App.-Corpus Christi 1989, pet. ref'd) (holding that bat was deadly weapon based on manner in which it was used to strike complainant's car). Previous cases have held it is not necessary to prove that wounds were inflicted in order to declare that an object was used as a deadly weapon. See English v. State, 171 S. W.3d 625, 628 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (citing Parrish v. State, 647 S.W.2d 8, 11 (Tex.App.-Houston [14th Dist.] 1982, no pet.)).

(1) *The physical proximity between the victim and the object*
The record reflects that the complainant was outside her SUV at the beginning of the attack and was forced to rush into the SUV before buckling in her children in order to avoid appellant's blows. She was in her SUV during the remainder of the attack. The record shows that appellant used the object to strike the SUV at least four to five times during the incident. The testimony shows that appellant stood close enough for the complainant to see him from within the SUV and to recognize that he was holding and using a bat or club to hit the SUV. The evidence also showed one of the blows to the SUV landed on the panel between the front and back side windows, implying that the bat or club came close enough to hit one of the windows.

The complainant testified that she was afraid of appellant during the attack and believed he had the capability to kill her and the children. The SUV stood as the only obstacle between the bat or club appellant was using and the complainant and her children. Noe and Aird also testified that they feared for the children's and the complainant's lives.

(2) *The threats or words used by the assailant*
The complainant testified that she heard appellant say to her, "come here, you b* * * *. I'm going to get you." Aird testified that he heard appellant say, "come on M* * * * * F* * *. Come on. I got something for you." Finally, Trevino testified while he was trying to get the attention of appellant away from his family he also heard appellant say, "Get out of the truck. I'm going to beat you. I'm going to kill you."

(3) *The size and shape of the weapon*
*4 At trial, the jury heard Noe's testimony that he initially thought the object was a four-by-four board, which is normally used in constructing fences, but that it appeared to have been altered to look like a bat. Aird testified that the object looked like a "large stick" that he believed was "thicker than a bat." While the complainant testified that she did not clearly see what appellant was using during the attack, she believed it to be an object that resembled a bat. When asked whether or not the object admitted into evidence resembled the object appellant had used during the attack, the complainant stated that it did. That object was a wooden club. Officer Flores testified that he had found appellant three or four blocks from the crime scene with a large wooden club and returned with him to the crime scene, where the complainant identified him as the attacker.

(4) *The weapon's ability to inflict death or serious bodily injury*
At trial, Officer Flores testified that it was his belief the weapon confiscated from appellant was capable of causing serious injury and death. The complainant testified that she was afraid for her life and for her children's lives. It was also Noe's belief that his wife and children could have been killed had the weapon come in contact with them directly. Noe also testified at trial that he chose not to get too close to appellant, even though his family was being attacked, because of fear that he could possibly be killed.

(5) *The manner in which the defendant used the weapon*
The witnesses testified that appellant used the object he was holding anywhere from four to five times to strike the complainant's SUV until she was finally able to drive around appellant and leave the parking lot. The trial court admitted pictures of the complainant's SUV, which established that appellant used the object with enough force to damage the vehicle. Aird testified that the blows to the SUV were so loud that they sounded as if a car bomb had gone off. Noe testified that he witnessed appellant using the weapon to hit the driver's side hood with all his might, which he interpreted as a sign that appellant was really trying to do some damage. Finally, the complainant testified that appellant made contact with her SUV on his very first swing and continued to make contact with each swing, also indicating that he intended to use the weapon to

• Result
cause damage.

When considering the totality of the facts and testimony, we conclude that a rational jury could find beyond a reasonable doubt that the weapon in the manner of its use or intended use was capable of causing death or serious bodily injury. See Tex. Penal Code Ann. § 1.07(a)(17)(A)(B).

We overrule appellant's first point of error.

### Factual Sufficiency

In his second point of error, appellant contends the evidence was factually insufficient to support his conviction. Specifically, appellant contends the State did not establish that he was the person who committed the acts complained of on the night of the incident.

*5 In a factual sufficiency analysis, the evidence is viewed in a neutral light. Drichas, 175 S.W.3d at 799. There are two established ways that an appellate court may find the evidence to be factually insufficient: 1) the evidence supporting the finding, when considered alone, is too weak to support the jury's finding beyond a reasonable doubt or 2) the contravening evidence is so strong that the State could not have met its burden of proof at trial. Id. (citing Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex.Crim.App.2004)).

**Identity of Attacker**
At trial, Noe testified that he stood a distance of 12 feet from appellant on the night of the incident. Noe also testified that he followed appellant from a distance of 10 feet to ensure that appellant would not leave his sight until the police arrived. Appellant contends on appeal that Noe did not describe appellant on the night of the incident. We disagree.

The record reflects that when the police arrived Noe pointed out appellant, whom he had been following right before appellant was arrested. Aird also gave appellant's description to the arresting officer prior to appellant's arrest. FN1 In addition, on the night of the incident, after appellant was arrested, Officer Flores returned appellant to the scene, where the complainant identified him as the attacker. Appellant did not introduce any evidence at trial to controvert that he was the person identified as the attacker on the night of the incident. Accordingly, we conclude that the evidence showing appellant's identity as the attacker was not so weak or so against the great weight and preponderance of the evidence that the jury could not have concluded beyond a reasonable doubt that he was the attacker.

> FN1. On appeal, appellant argues the witnesses and the complainant knew appellant prior to the incident. However, the only witness who testified that he knew appellant and had contacted the police regarding appellant was offered at the punishment phase, not the guilt-innocence stage.

We overrule appellant's second point of error.

### Conclusion

We affirm the judgment of the trial court.

Tex.App.-Houston [1 Dist.],2008.
Alpine v. State
Not Reported in S.W.3d, 2008 WL 2388128 (Tex.App.-Hous. (1 Dist.))

Briefs and Other Related Documents (Back to top)

• 01-07-00177-CR (Docket) (Mar. 5, 2007)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.